# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| DIANE DONATO, on Behalf of Herself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ORBITAL ATK, INC., DAVID W. THOMPSON, RONALD R. FOGLEMAN, KEVIN P. CHILTON, ROXANNE J. DECYK, LENNARD A. FISK, RONALD T. KADISH, TIG H. KREKEL, DOUGLAS L. MAINE, ROMAN MARTINEZ IV, JANICE I. OBUCHOWSKI, JAMES G. ROCHE, HARRISON H. SCHMITT, and SCOTT L. WEBSTER, <br><br> Defendants. | Civil Action No.:  1:17cv1271  (CMH/TCB) <br><br><br> **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Diane Donato ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of her counsel as to all other allegations herein, as follows:

## SUMMARY OF THE ACTION

1.     This is a class action brought on behalf of the public stockholders of Orbital ATK, Inc. ("Orbital ATK" or the "Company") against Orbital ATK and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. 240.14a-9 and to enjoin

the vote on a proposed transaction, pursuant to which Orbital ATK will be acquired by Northrop Grumman Corporation ("Northrop Grumman"), through its wholly-owned subsidiary Neptune Merger, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On September 18, 2017, Orbital ATK and Northrop Grumman issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated September 17, 2017, (the "Merger Agreement") pursuant to which Northrop Grumman will acquire Orbital ATK.  Under the terms of the Merger Agreement, Orbital ATK stockholders will have the right to receive $134.50 in cash for each share of Company common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $9.2 billion.

3.      On October 2, 2017, Orbital ATK filed a Preliminary Proxy Statement on Schedule 14A (the "Proxy") with the SEC.  The Proxy, which recommends that Orbital ATK stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Orbital ATK management's projections, utilized by Orbital ATK's financial advisor, Citigroup Global Markets Inc. ("Citigroup"), in its financial analyses; (ii) the valuation analyses prepared by Citigroup in connection with the rendering of its fairness opinion; and (iii) Orbital ATK insiders' potential conflicts of interest.  The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Orbital ATK stockholders need such material information in order to cast a fully-informed vote or seek appraisal in connection with the Proposed Transaction.

4.      In short, unless remedied, Orbital ATK's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange

Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because Orbital ATK maintains offices in this District, and a substantial portion of the events or omissions giving rise to the claims occurred in this District.  Moreover, each of the Individual Defendants as Company officers and/or directors has extensive contacts within this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, a continuous stockholder of Orbital ATK.

9.      Defendant Orbital ATK is a Delaware corporation with its principal executive offices located at 45101 Warp Drive, Dulles, Virginia 20166.  Orbital ATK's common stock is traded on the New York Stock Exchange under the ticker symbol "OA."

10.     Defendant David W. Thompson ("Thompson") co-founded the Company's

predecessor, Orbital Sciences Corporation ("Orbital"),[1] and has served as Chairman of the Board, Chief Executive Officer ("CEO") and a director of the Company and its predecessor since 1982. From 1982 to 1999, defendant Thompson also served as President of Orbital, resuming that role in mid-2011.

11.    Defendant Ronald R. Fogleman ("Fogleman") has been non-executive Chairman of the Board since November 2009 and a director of the Company and its predecessor since 2004.

12.    Defendant Kevin P. Chilton ("Chilton") has been a director of the Company and its predecessor since 2012.

13.    Defendant Roxanne J. Decyk (Decyk") has been a director of the Company and its predecessor since 2010.

14.    Defendant Lennard A. Fisk ("Fisk") has been a director of the Company and its predecessor since 1993.

15.    Defendant Ronald T. Kadish ("Kadish") has been a director of the Company and its predecessor since 2005.

16.    Defendant Tig H. Krekel ("Krekel") has been a director of the Company and its predecessor since 2010.

17.    Defendant Douglas L. Maine ("Maine") has been a director of the Company and its predecessor since 2006.

18.    Defendant Roman Martinez IV ("Martinez") has been a director of the Company and its predecessor since 2004.

---

[1] In February 2015, Orbital merged with Alliant Techsystems Inc. ("Alliant Techsystems") (formerly known as ATK), forming Orbital ATK.

19.     Defendant Janice I. Obuchowski ("Obuchowski") has been a director of the Company and its predecessor since 1996.

20.     Defendant James G. Roche ("Roche") has been a director of the Company and its predecessor since 2005.

21.     Defendant Harrison H. Schmitt ("Schmitt") has been a director of the Company and its predecessor since 1983.

22.     Defendant Scott L. Webster ("Webster") has been a director of the Company and its predecessor since 1982.

23.     Defendants identified in paragraphs 10-22 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

24.     Northrop Grumman is a Delaware corporation and leading global security company that offers a broad portfolio of capabilities and technologies to deliver innovative products, systems and solutions for applications areas such as undersea, outerspace and cyberspace.

25.     Merger Sub is a Delaware company and a wholly-owned subsidiary of Northrop Grumman.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Orbital ATK common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

27.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

28.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.  As of September 26, 2017, there were approximately 57,645,167 shares of Orbital ATK common stock issued and outstanding.  All members of the Class may be identified from records maintained by Orbital ATK or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

29.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

(a)     Whether defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(b)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable harm were the Proposed Transaction consummated.

30.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

31.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

32.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### Company Background and Strong Financial Outlook

33.     Orbital ATK is an aerospace and defense systems company and supplier of related products to the U.S. government, allied nations, and prime contractors, among other customers. The Company's main products include launch vehicles and related propulsion systems; satellites and associated components and services; composite aerospace structures; tactical missiles, subsystems and defense electronics; and precision weapons, armament systems and ammunition.

34.     The Company was formed from the February 2015 merger of Orbital and Alliant Techsystems.  On February 9, 2015, Alliant Techsystems completed a spin-off and distribution of its former sporting group to Alliant Techsystems' stockholders as a new public company called Vista Outdoor Inc. ("Vista Outdoor").  Immediately following the distribution, Alliant Techsystems combined with Orbital, forming the combined company, Orbital ATK.

35.     Orbital ATK conducts business in three segments: Flight Systems Group, Defense Systems Group and Space Systems Group.  The Flight Systems Group operates in the military and commercial aircraft and launch structures markets.  This group develops launch vehicles to place satellites into Earth orbit and escape trajectories, interceptor and target vehicles for missile defense systems, and suborbital launch vehicles to place payloads into a variety of high-altitude trajectories.  The Defense Systems group develops and produces small-, medium- and large-caliber ammunition, precision weapons and munitions, high-performance gun systems, and propellant and energetic materials.  This group is a leader in tactical solid rocket motor

development and production for air-, sea- and land-based missile systems and produces the U.S. Navy's Advanced Anti-Radiation Guided Missile.  The Space Systems Group develops and produces small- and medium-class satellites to enable global and regional communications and broadcasting, conduct space-related scientific research and perform other activities related to national security.  This group also develops and produces human-rated space systems for Earth-orbit and deep-space exploration, delivers cargo to the International Space Station, and provides spacecraft components, subsystems, and specialized engineering and operations services to U.S. government agencies.

36.     On August 3, 2017, Orbital ATK reported its second quarter of 2017 financial results.  For the quarter, the Company reported revenues of $1,115 million, a 2.9% increase from $1,084 million in the second quarter of 2016.  The press release highlighted the quarter's success and positive outlook, stating in relevant part, "[t]he quarter was highlighted by solid revenue growth, strong profit margin performance and continued robust contract bookings. As a result, the company increased its revenue and earnings per share guidance and reaffirmed its free cash flow outlook for 2017."  Defendant Thompson further noted:

> Based on our strong results in the second quarter and a positive outlook for remainder of the year, we are on track to exceed our initial financial objectives for 2017. . . . The revenue growth that is now being realized stems from exceptional new business performance over the past two years. Operational performance has also been outstanding across all business segments as we continue to execute our programs on schedule, producing reliable, affordable and innovative products that support the vital work being carried out by our customers.

Orbital ATK's Chief Financial Officer ("CFO") Garrett E. Pierce ("Pierce") also commented on the Company's strong financial performance in the second quarter, stating:

> The second quarter results reflected good top-line growth, considering the temporary Lake City headwind, as well as solid margin performance. At the midpoint of the year, the company is performing well both financially and operationally and is meeting or exceeding our annual plan. . . . As we move to the

second half of 2017, we expect revenue and earnings to accelerate and our schedule of operational milestones to trigger significant free cash flow.

**The Sale Process**

37.     The Proposed Transaction is the result of a single-bidder process designed to benefit Orbital ATK insiders and Orbital ATK's longstanding customer, Northrop Grumman. Despite having garnered interest from potential acquirers in recent years,[2] the Board failed to conduct even a limited market check before agreeing to the Proposed Transaction.

38.     Orbital ATK and Northrup Grumman have a longstanding commercial relationship as Orbital ATK is Northrup Grumman's supplier on several significant programs.

39.     On May 24, 2017, Northrup Grumman's Chairman, CEO and President, Wesley G. Bush ("Bush") initiated a meeting with defendant Thompson and indicated his desire to expand Northrup Grumman's business relations with Orbital ATK.  Also on May 24, 2017, Northrup Grumman's Vice President of Strategic Planning, Brett B. Lambert ("Lambert") met with Orbital ATK's Chief Operating Officer, Blake E. Larson ("Larson") and, echoing Bush, outlined Northrup Grumman's desire to pursue closer business relations with Orbital ATK.

40.     On June 1, 2017, defendants Thompson and Fogleman met and determined that Orbital ATK management should explore Northrup Grumman's interest in a range of strategic relationships with Orbital ATK.

41.     On June 28, 2017, Northrop Grumman indicated it was interested in a possible acquisition of the Company, but would not participate in an auction process.

---

[2] In 2015, a company identified in the Proxy as Company A approached Orbital ATK about a potential acquisition.  The parties entered into a mutual non-disclosure agreement, but Orbital ATK terminated discussions in December 2015.  In 2016, a company identified in the Proxy as Company B approached Orbital ATK about a potential acquisition.  The parties entered into a mutual non-disclosure agreement, but, following several meetings and discussions, the parties terminated discussions in 2017.

42.     The parties subsequently entered into a mutual non-disclosure agreement and engaged in due diligence.

43.     On July 26, 2017, Bush indicated Northrup Grumman was interested in potentially acquiring Orbital ATK for $130.00 per share in cash.

44.     Following the Board's determination that the offer was inadequate, on August 17, 2017, Bush increased Northrup Grumman's proposal to $134.00 per share.

45.     The Board met on August 18 and 22, 2017 to consider the revised proposal. Although the Company had not conducted even a minimal market check, the Board determined that the risk of unauthorized or inadvertent disclosure of a potential transaction between Orbital ATK and Northrup Grumman and the possibility of Northrup Grumman withdrawing its offer outweighed the benefit of contacting other potential strategic buyers.

46.     On August 24, 2017, with the Board's authority, defendant Thompson provided Bush a counterproposal requesting that Northrup Grumman either: (i) (a) have committed financing with no financing contingency at closing, (b) agree to take any and all necessary actions to secure antitrust approval, and (c) agree to a tiered break-up fee with a fee of $125 million for the first 45 days after signing, increasing to $250 million thereafter; or (ii) increase the price to a range of $135.00 to $136.00 per share.

47.     On August 25, 2017, Bush informed defendant Thompson that Northrop Grumman was prepared to increase its offer to $134.50 per share, but would not agree to all provisions, including the two-tiered termination fee.

48.     The Board met the same day and agreed it would be willing to accept the $134.50 per share price.

49.     The parties finalized the remaining terms of the deal and on September 16, 2017,

Citigroup rendered its fairness opinion and the Board approved the Merger Agreement.

**The Proposed Transaction**

50.     On September 18, 2017, Orbital ATK and Northrop Grumman issued a joint press

release announcing the Proposed Transaction.  The press release stated, in relevant part:

> FALLS CHURCH and DULLES, Va. – Sept. 18, 2017 – Northrop Grumman Corporation (NYSE: NOC), a leading global security company, and Orbital ATK, Inc. (NYSE: OA), a global leader in aerospace and defense technologies, today announced they have entered into a definitive agreement under which Northrop Grumman will acquire Orbital ATK for approximately $7.8 billion in cash, plus the assumption of $1.4 billion in net debt. Orbital ATK shareholders will receive all-cash consideration of $134.50 per share. The agreement has been approved unanimously by the Boards of Directors of both companies. The transaction is expected to close in the first half of 2018 and is subject to customary closing conditions, including regulatory and Orbital ATK shareholder approval.

> "The acquisition of Orbital ATK is an exciting strategic step as we continue to invest for profitable growth. Through our combination, customers will benefit from expanded capabilities, accelerated innovation and greater competition in critical global security domains. Our complementary portfolios and technology-focused cultures will yield significant value creation through revenue synergies associated with new opportunities, cost savings, operational synergies, and enhanced growth. We look forward to welcoming Orbital ATK's talented employees to Northrop Grumman, and believe our combined strength will benefit our customers and shareholders," said Wes Bush, chairman, chief executive officer and president of Northrop Grumman.

> * * *

> Upon completion of the acquisition, Northrop Grumman plans to establish Orbital ATK as a new, fourth business sector to ensure a strong focus on operating performance and a smooth transition into Northrop Grumman. On a pro forma 2017 basis, Northrop Grumman expects to have sales in the range of $29.5 to $30 billion based on current guidance. Northrop Grumman expects the transaction to be accretive to earnings per share and free cash flow per share in the first full year after the transaction closes, and to generate estimated annual pre-tax cost savings of $150 million by 2020.  Northrop Grumman has received fully committed debt financing and expects to put in place permanent financing prior to closing. Northrop Grumman remains committed to maintaining a solid investment grade credit rating and will use its strong cash flow to support debt reduction, while continuing to pay a competitive dividend and repurchase shares.

**Insiders' Interest in the Proposed Transaction**

51.     Orbital ATK and Northrop Grumman insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Orbital ATK.

52.     Notably, it appears that certain members of Orbital ATK management have secured positions for themselves following completion of the Proposed Transaction.  For example, during Orbital ATK and Northrop Grumman's joint September 18, 2017 analyst call on the Proposed Transaction, defendant Thompson stated: "[s]o it has -- it's been a point of agreement from early on in our discussions between Wes and me that we keep our operating management teams and our workforce in place and focused on what they do every day for our customers."

53.     Further, Orbital ATK insiders stand to reap substantial financial benefits for securing the deal with Northrop Grumman.  Each outstanding option, restricted share, and performance share assuming the executive officers waive their rights under Orbital ATK's income security plans, will automatically vest and convert into the right to receive cash payments.  The following table summarizes the cash payments the Company's named executive officers stand to receive in connection with their equity awards upon consummation of the Proposed Transaction:

| Name | Options ($) | Restricted Shares ($) | Performance Shares ($) | Deferred Stock Units ($) | Phantom Stock Units ($) | Total ($) |
|---|---|---|---|---|---|---|
| David W. Thompson | 2,048,795 | 2,889,195 | 2,833,646 | — | — | 7,771,636 |
| Garrett E. Pierce | 895,503 | 1,275,598 | 1,252,464 | — | — | 3,423,565 |
| Blake E. Larson | 1,063,410 | 1,524,692 | 1,498,061 | — | — | 4,086,163 |

| Name | | | | | |
|------|---|---|---|---|---|
| Frank L. Culbertson | 489,754 | 690,254 | 676,939 | — | — | 1,856,947 |
| Scott L. Lehr | 375,816 | 680,839 | 626,098 | — | — | 1,682,753 |

54.     Additionally, if Orbital ATK's named executive officers are terminated in connection with the Proposed Transaction, they stand to receive substantial severance benefits in the form of golden parachute compensation, as set forth in the table below:

| Name | Cash [1] ($) | Equity [2] ($) | Pension/ NQDC [3] ($) | Total [4] ($) |
|------|---|---|---|---|
| David W. Thompson President & Chief Executive Officer | 6,112,890 | 7,771,636 | 480,263 | 14,364,789 |
| Garrett E. Pierce Chief Financial Officer | 3,967,241 | 3,423,565 | 281,226 | 7,672,032 |
| Blake E. Larson Chief Operating Officer | 3,967,241 | 4,086,163 | 330,168 | 8,383,572 |
| Frank L. Culbertson Executive Vice President & President, Space Systems Group | 1,858,292 | 1,856,947 | 121,496 | 3,836,735 |
| Scott L. Lehr Executive Vice President & President, Flight Systems Group | 1,864,681 | 1,682,753 | — | 3,547,434 |

**The Proxy Contains Numerous Material Misstatements or Omissions**

55.     Defendants filed a materially incomplete and misleading Proxy with the SEC and disseminated it to Orbital ATK's stockholders.  The Proxy misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting decision in connection with the Proposed Transaction.

56.     Specifically, as set forth below, the Proxy fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Orbital ATK management's projections, including the projections utilized by the Company's financial advisor, Citigroup in its financial analyses; (ii) the valuation analyses prepared by Citigroup in connection with the rendering of its fairness opinion; and (iii) Orbital ATK insiders' potential conflicts of interest.  Accordingly, Orbital ATK stockholders are being asked to vote

for the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning Orbital ATK's Financial Projections***

57.     The Proxy is materially deficient because it fails to disclose material information relating to the Company's intrinsic value and prospects going forward.

58.     First, the Proxy omits material information regarding Orbital ATK management's financial projections and the financial analyses performed by the Company's financial advisor, Citigroup.

59.     For example, the Proxy states that "Citigroup also performed a discounted cash flow analysis of Orbital ATK by calculating the estimated present value of the unlevered, after-tax free cash flows that Orbital ATK was forecasted to generate during calendar years 2018 through 2020 based on the Orbital ATK projections" (Proxy at 47), but fails to disclose the Company's unlevered, after-tax free cash flows for the projection period and further fails to disclose the line items utilized to calculate the Company's unlevered, after-tax free cash flows as well as the definition of unlevered, after-tax free cash flows.  Also with respect to Orbital ATK's financial projections, the Proxy fails to disclose: (i) the impact of cash pension reimbursements and contributions and annual cash flows from Orbital ATK's A350 and CRS-2 receivables ("Additional Cash Flow Items"); (ii) net income; (iii) cash from operating activities; (iv) capital expenditures; and (v) a reconciliation of all non-GAAP to GAAP metrics.

60.     The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" section of the Proxy false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Citigroup's Financial Analyses***

61.     The Proxy describes Citigroup's fairness opinion and the various valuation analyses performed in support of its opinion.  However, the description of Citigroup's fairness

opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Orbital ATK's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Citigroup's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.  This omitted information, if disclosed, would significantly alter the total mix of information available to Orbital ATK's stockholders.

62.     With respect to Citigroup's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the Company's unlevered, after-tax free cash flows for calendar years 2018 through 2020, the constituent line items used in calculating unlevered free cash flows, including cash from operating activities and capital expenditures, as well as the definition of unlevered, after-tax free cash flows; (ii) the Additional Cash Flow Items; (iii) the implied terminal value multiples resulting from the analysis; and (iv) the inputs and assumptions underlying the discount rate range of 6.9% to 8.2%.

63.     With respect to Citigroup's *Selected Public Companies Analysis*, the Proxy fails to disclose the individual firm value to estimated 2018 EBITDA and per share equity values to estimated 2018 EPS multiples for the selected companies observed by Citigroup as well as any benchmarking financial metrics of the selected companies.

64.     With respect to Citigroup's *Selected Transactions Analysis*, the Proxy fails to disclose the individual firm value to LTM EBITDA multiples for the selected transactions and the financial metrics and any other multiples observed by Citigroup of the target companies.

65.     When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover,

the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

66.    The omission of this information renders the statements in the "Opinion of Financial Advisor" section of the Proxy false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Insiders' Potential Conflicts of Interest***

67.    The Proxy also materially misleads stockholders as to the potential conflicts of interest faced by Orbital ATK management and the Board.

68.    The Proxy fails to disclose whether any members of Orbital ATK management or the Board will continue with the post-close company.  Notably, during the September 18, 2017 joint analyst call defendant Thompson stated: "[t]he combination will allow our team as a new business sector within Northrop," implying that Orbital ATK management will continue with the post-close company.  Indeed, defendant Thompson further stated:

> it's been a point of agreement from early on in our discussions between Wes and me that we keep our operating management teams and our workforce in place and focused on what they do every day for our customers.  We have not made any final decisions on sector leadership. But like our other senior corporate executives, I am very supportive of this transaction and will be available to support Wes and his team as we move forward.

Yet, the Proxy fails to set forth any of the employment related discussions and negotiations that occurred between Northrup Grumman and Orbital ATK executive officers, including who participated in all such communications, when they occurred, and their content.  The Proxy further fails to disclose whether any of Northrup Grumman's prior proposals or indications of interest mentioned management retention.

69.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

70.     Such information is material to Orbital ATK stockholders before their critical decision on the Proposed Transaction to (i) assess the Board's decision to enter into the Merger Agreement with Northrup Grumman; (ii) assess whether the decision to enter into the Merger Agreement was clouded by conflicts of interest; and (iii) be fully informed whether the Board has erected measures to preclude the possibility of a topping bid by interested parties.

71.     The omission of this information renders the statements in the "Background of the Merger" and "Interest of Directors and Executive Officers in the Merger" sections of the Proxy false and/or materially misleading in contravention of the Exchange Act.

**CLAIMS FOR RELIEF**

**COUNT I**

**Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

72.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

73.     During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

74.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy.  The Proxy was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the actual intrinsic standalone value of the Company, the financial analyses performed by the Company's financial advisors, and Company insiders' potential conflicts of interest.  The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

75.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

76.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

77.     Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

78.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

79.     The Individual Defendants acted as controlling persons of Orbital ATK within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Orbital ATK and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with

the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

80.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

81.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

82.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

83.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

84.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the

Exchange Act.   As a direct and proximate result of defendants' conduct, Orbital ATK's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief, in her favor and in favor of the Class and against defendants as follows:

A.   Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.   Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Orbital ATK stockholders;

C.   In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

D.   Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.   Awarding Plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.   Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: November 7, 2017

_/s/ Elizabeth K. Tripodi_
Elizabeth Tripodi, VA Bar #73483
LEVI & KORSINSKY LLP
1101 30th St. NW, Suite 115
Washington, D.C. 20007

Telephone:     (202) 524-4290
Facsimile:     (202) 333-2121
etripodi@zlk.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**FEDERMAN & SHERWOOD**
William B. Federman
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112